## MORRIS v. ANDERSON.

MORTGAGES—ACCOUNTING—PAYMENTS— EVIDENCE — SUFFICIENCY.
On a bill against a mortgagee for an accounting as to transactions between himself and the deceased mortgagor, evidence examined, and *held*, to support a finding that the amount of a certain mortgage was not included in and discharged by a subsequent mortgage, and to be insufficient to support a finding that certain payments were made by the mortgagor to the mortgagee.

Appeal from Van Buren; Carr, J.   Submitted October 18, 1905.   (Docket No. 70.)   Decided December 15, 1905.

Bill by Martha Morris, Laura N. Morris, and May G. Vining against Le Grand R. Anderson and May Grace Hammond for an accounting.   From a decree for complainants, defendants appeal.   Reversed.

*Thomas J. Cavanaugh* and *L. A. Tabor*, for complainants.

*David Anderson* and *Dallas Boudeman*, for defendants.

MONTGOMERY, J.   The complainant Martha is the widow, and her co-complainants are heirs at law, of Amos Morris who died intestate, December 20, 1893, possessed of the legal title to two farms, one of 134 acres in Cass county, and one of 79 acres in Van Buren county.   These farms were then apparently subject to mortgages running to defendant Anderson of $4,200 and $2,000, respectively, each of which had been running many years and bore interest at a high rate.   The $2,000 mortgage bore date March 31, 1882, and bore interest at 8 per cent.   The $4,200 mortgage bore date March 27, 1886, and bore interest at the same rate.   After the death of Mr. Morris, and on the 8th day of November, 1894, and on the 7th day of

January, 1895, deeds of conveyance of the two farms, executed by the complainants to defendant Anderson, were signed and acknowledged by all of the complainants, and found their way into the hands of defendant Anderson. Some question is made as to whether they were delivered or whether they were taken by Anderson into his possession without the assent of complainants. This bill is filed for an accounting of transactions between Amos Morris and defendant Anderson. It is sought to review, not only the transactions which have taken place since the making of the mortgages in question, but those which took place some years before. On a hearing before the circuit judge it was found that the value of the two farms exceeded the amount due to Anderson, and a decree in the sum of $7,983.04 was entered for complainants.

It appears that June 19, 1879, Morris borrowed of Anderson $2,000, giving a mortgage on the Cass county farm at 8½ per cent. Again, on April 13, 1880, Morris gave a mortgage to Anderson of $600 upon the Van Buren county land. The $2,000 mortgage of March 31, 1882, it is admitted, was given to take the place of the $600 mortgage. The bill also alleges that this mortgage included the interest on the $2,000 mortgage of 1879, which had accrued to that date. This is denied by the answer. The bill further alleges that, when the $4,200 mortgage of March 27, 1886, was made, it was agreed that it was to take the place of both the $2,000 mortgages, and that both were to be discharged. This is denied by the answer. It is admitted that the first $2,000 mortgage on the same land was to be discharged (as it was in fact), but it is denied that the other $2,000 was satisfied by the $4,200 mortgage. The defendants' claim, therefore, is that in any consideration of the dealings the starting point should be the two subsisting and valid mortgages of $2,000 and $4,200, respectively, while complainants contend that the latter only represented a subsisting indebtedness. The circuit judge found against this contention of complainants, and, as we read the record, this conclusion has the

· support of evidence which is most persuasive, if not conclusive.

On the trial a paper headed " L. R. Anderson Notes " was produced, and it was shown by the cross-examination of the complainant Mrs. Vining that the memorandum was in her handwriting, except the two last items. She testified that she got the items probably about the time of the appraisal of the assets of Mr. Morris' estate; that she found some of the notes mentioned in the schedule; that these notes had her father's name on, and were in her mother's possession. The notes were not produced, but the schedule showed notes made in 1880 and 1881 prior to March 31, 1882, which, with interest, and entirely exclusive of the $2,000 mortgage of 1879, made up an amount lacking but a few dollars of the amount of the note and mortgage made on March 31, 1882, thus excluding the idea that the 1879 mortgage or the interest on it was included in the 1882 mortgage.

As to the claim that both $2,000 mortgages were included in the $4,200 of March 27, 1886, this same memorandum goes far to show that this was impossible. The memorandum shows that Mr. Morris borrowed various sums of Mr. Anderson in May, July, and August, 1882, and in February, 1886, which, with interest, aggregated nearly $500, which, if added to the $2,000 and interest thereon, amounts to more than $3,900. We think, in view of the failure of any evidence of payments during this time, the fact that Mr. Morris was frequently borrowing money of Mr. Anderson overcomes any possible presumption that the interest on the $2,000 mortgage was paid, and precludes the idea that both the smaller mortgages were included in the larger one. So we agree with the circuit judge that these two mortgages are shown to have been made upon sufficient consideration. Considering the length of time which has elapsed since these transactions occurred, we may say that it is surprising that, in the absence of testimony from the defendant himself, so complete a showing of consideration is made.

The complainants, however, claim that from this date payments were made from time to time by Mr. Morris, aggregating large sums. And the circuit judge accepted this contention. The testimony which is claimed to have established such payments consists in certain testimony of payments in detail, to which reference will be made later, of testimony tending to show that Mr. Morris was a man of frugal habits, and possessed of sufficient income so that he might have paid down this indebtedness, and of the statement of Mr. Anderson, when negotiating for the deeds, that a considerable sum would be coming to the complainants on the Van Buren county land.

The memorandum above referred to goes far to overcome the presumption of payments which might arise from the evidence showing an income adequate to the purpose of reducing these debts and frugal habits. The fact appears that Morris continued to be a borrower. A small note was given in August, 1887, another to his brother (afterwards purchased by Anderson) in 1881, and one of $100 to Hammond in May, 1887. Nor does the testimony in the case, when carefully read, justify the extravagant claims made by counsel for the complainants as to the income of Mr. Morris. The Cass county farm was worked on shares by Mr. Vining. The income of Mr. Morris from this source did not largely exceed the taxes and the expense of a new kitchen, new granary, repairs on barn, and a new cistern. The other source of income was a fruit farm in Lawton. The income from this farm varied from year to year, but the average of receipts from 1882 to 1893 was but little over $700 per year, and when the expenses of cultivation were taken out, and the cost of improvements and harvesting and marketing the fruit, it is very doubtful if there was sufficient income from all sources to pay the running expenses of the family, including the cost of nursing during the two last years of Mr. Morris' life. An indorsement appears on the $4,200 note, Dec. 15, 1890, $278.25. This was the year in which the largest income from the fruit farm was had. Mrs. Morris

testifies that $600 was paid in this year. On cross-examination, however, it appears that an indorsement was made in her presence of some amount at this time. And what is most significant is that the checks which she testifies were paid amount to precisely the amount of the indorsement on the $4,200 note. It is also significant that in the memorandum above referred to she noted the payments claimed, and under date of October, 1890, wrote a draft or certificate of deposit from the Paw Paw bank of over $200. It is difficult to reconcile these entries with the present claim that this payment was $600.

The testimony of a payment of $400 rests upon hearsay. As to the statement of Mr. Anderson that the Van Buren county land was worth something more than the mortgage, and his offer to make this up by deeding other lands, it may be said that this statement is claimed to have been made prior to the final adjustment. It is undoubted that after having the interest computed in January, 1895, Anderson was asserting that the mortgages and the other claims which he held, or agreed to take care of, exceeded the value of both farms. We are satisfied the deeds were delivered without other reservation than that of the right to have the computation made by Mr. McKeyes. It appears that complainants afterwards learned that the papers were with Mr. McKeyes, but did not have the computation made, but after the lapse of six years filed this bill for an accounting, when, as complainant testifies, "after Mr. Lyle had his suit, and public sentiment had worked up enough so that I thought advisable to have an accounting," she commenced this proceeding. We are convinced that the decree was wholly wrong, and that upon a fair accounting for the value of the land, and charging against the same the mortgages, less the payments established, nothing is due complainants.

The decree is reversed, with costs of both courts to defendants.

McALVAY, GRANT, BLAIR, and HOOKER, JJ., concurred.